COLONIE HILL LTD., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 585, Dockets 74–2178, 74–2350.

United States Court of Appeals,
Second Circuit.

Argued June 19, 1975.

Decided July 18, 1975.

Hynes & Diamond, New York City, for petitioner; Francis P. Donelan and Ralph C. Kreimer, New York City, of counsel.

Michael S. Winer and Hope P. Zelasko, Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Before LUMBARD, GIBBONS,* and GURFEIN, Circuit Judges.

PER CURIAM:

Petitioner Colonie Hill, Ltd. seeks to review and set aside a final order of the NLRB holding (1) that it violated § 8(a)(1) & (2) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (2) by requiring its employees to join a union when no valid union security agreement was in force, and (2) that it violated § 8(a)(1), (2) & (3) of the Act, 29 U.S.C. § 158(a)(1), (2) & (3) by discriminatorily discharging and refusing to re-

* United States Circuit Judge for the Third Circuit, sitting by designation.

hire employee Squicciarini for his refusal to join the favored union. We conclude that the Board's order should be enforced.

Early in 1972, petitioner Colonie Hill, Ltd., opened a business in Hauppauge, New York. On March 4, 1972 the company and Local 100, Service Employees International Union, AFL–CIO (Local 100) entered into a three-year collective bargaining agreement which included union security and dues check-off provisions. On August 31, 1972, unfair labor practice charges were filed against both petitioner and Local 100 for coercing employees to join the local. When the General Counsel issued a complaint against both, a settlement agreement was entered into. In it the petitioner agreed not to recognize Local 100 as bargaining representative "unless and until said labor organization shall have been certified by the . . . Board . . . .", and not to "give any force or effect" to the collective bargaining agreement with Local 100, "or to any modification, extension, renewal or supplement thereto . . . .."

On December 14, 1972 a representation election was held under Board auspices, and on December 26, 1972, Local 100 was certified as the exclusive representative of all employees in a bargaining unit consisting of service and maintenance employees. Thus, as of December 26, 1972, the petitioner could properly look to Local 100 as the legitimate representative of the unit employees. However, since by the terms of the settlement agreement, the March 4, 1972 contract had been abrogated, and with it the union security and dues check-off provisions, the company was not then free to condition employment on union membership or to deduct dues. Nevertheless substantial evidence suggests that during the early months of 1973 petitioner exerted pressure on its employees to join Local 100. In June it discharged Squicciarini, a long-time Local 100 opponent who refused to sign a Local 100 card.

In July, 1973 petitioner and Local 100 entered into a new collective bargaining agreement which contained both union security and dues check-off provisions. There is no challenge to the validity of this agreement. This petition deals with the period between the December 26, 1972 certification, and the execution of the July, 1973 agreement.

█■ An employer violates § 8(a)(1) and (2) of the Act if he requires that employees join a labor organization in the absence of a valid union security agreement. *I.L.G.W.U. (Bernard Altman) v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). However, petitioner contends that the effect of the settlement agreement is that upon the union's certification by the Board the March 4, 1972 collective bargaining agreement became operative. We agree with the Board that the overall effect of the text of this settlement agreement is otherwise. Alternatively, petitioner contends that upon certification it entered into a new oral agreement with Local 100 which provided that an agreement on the old terms would continue until a new written contract came into effect. The Board's holding is that the settlement agreement precluded any such oral revival of the March 4, 1972 agreement. We agree that according to its terms this was the intended effect of the settlement agreement, and that any mental reservations or unexpressed terms cannot vary its express provisions.

█ Petitioner also contends that Squicciarini was not terminated for his opposition to Local 100, but for legitimate cause, a slow-down on his job. On the instant record the issue is close, but we cannot hold that the Board's conclusion that Squicciarini's discharge was motivated by his opposition to Local 100 is unsupported by substantial evidence on the record as a whole. We may not substitute our evaluation of the evidence for that of the Board.

The petition for review will be denied and the Board's order will be enforced.